UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, *et al.* ) | |
| ) | |
| **Plaintiffs** ) | Case No. 3:05-0217 |
| ) | **Judge Trauger** |
| v. ) | |
| ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, ) | |
| an agency of the United States; and Lieutenant General ) | |
| Robert B. Flowers, Commander of the Corps; ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, an agency of the United ) | |
| States; and Stephen L. Johnson, Acting Administrator, ) | |
| United States Environmental Protection Agency ) | |
| ) | |
| **Defendants** ) | |

## MEMORANDUM

Pending before the court is the defendants' Motion to Dismiss Plaintiffs' Complaint (Docket No. 26), to which the plaintiffs have responded (Docket No. 29), and the defendants have replied (Docket No. 32). For the reasons discussed herein, the defendants' motion will be granted.

## FACTUAL BACKGROUND and PROCEDURAL HISTORY

On September 11, 2002, the Army Corps of Engineers ("Corps") issued a jurisdictional determination that the wetlands adjacent to the Upper Cumberland Regional Airport ("UCRA") were not "waters of the United States," such as would be necessary to make them subject to Corps

1

jurisdiction under the Clean Water Act ("CWA").[1] *See* 33 U.S.C. § 1362(7) (2000). The Corps made this decision in response to a March 17, 1999 inquiry by Richard Rinks, a UCRA consulting engineer, as to whether a permit was required to "lower the level of the water" in the wetlands.[2] (Docket No. 29, Ex. B, May 5, 1999 Letter to Ron Gatlin)

In 2003, the plaintiffs began their efforts to convince the Corps to reverse its determination that the wetlands were not subject to jurisdiction under the CWA. The plaintiffs expressed their dissatisfaction with the Corps' methods of determining whether the wetlands were connected to other bodies of water, so as to deem them "waters of the United States." The plaintiffs ultimately hired their own consultant, Dr. Albert Ogden, to perform a dye trace study on the wetlands for the purposes of determining whether the wetlands were, in fact, linked to waters nearby. Dr. Ogden's June 24, 2004 report, which the plaintiffs shared with the defendants, indicated a hydrological connection between the UCRA wetlands and other waters in the area.

On August 24, 2004, the plaintiffs, in the hope of pushing the defendants toward meaningful action, filed with the Corps and with the Environmental Protection Agency ("EPA") a CWA Notice-of-Intent-to-Sue Letter. Some months afterward, they provided the defendants with supplemental written information about the details of Dr. Ogden's study. On January 18, 2005, the plaintiffs inquired whether this new information had led the Corps to reach a different conclusion about the status of the wetlands. On March 16, 2005, having received no such assurance from the Corps, the plaintiffs filed suit in this court.

---

[1] Unless otherwise noted, all facts have been drawn from the plaintiffs' Complaint for Declaratory Relief (Docket No. 1) and the Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss (Docket No. 29).

[2] Parties hoping to discharge pollutants, including dredged or fill material, into "waters of the United States" first must obtain a permit from the Army Corps of Engineers. 33 U.S.C. §§ 1311(a), 1344(a),(d).

The plaintiffs seek a declaratory judgment that (1) the Corps' determination that the UCRA wetlands were not jurisdictional under the CWA was arbitrary and capricious, contrary to law, a clear error of judgment, and a violation of the Administrative Procedure Act; (2) the entirety of the UCRA wetlands are "waters of the United States" that are subject to CWA jurisdiction; and (3) the Corps and the EPA failed to perform their mandatory duties to assert jurisdiction over the UCRA wetlands. They also seek litigation costs, including reasonable attorney and expert witness fees.

On May 5, 2005, four days before the initial case management conference in this court, the defendants, who claim that they began reevaluating their September 11, 2002 determination "starting in the summer of 2004" (Docket No. 27 at 4), sent a letter to Mr. Rinks notifying him of their decision that the UCRA wetlands were, in fact, subject to CWA jurisdiction and that, consequently, any proposed filling of the wetlands was required to undergo Corps review.

## ANALYSIS

The defendants have brought this motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant attacks subject matter jurisdiction under Rule 12(b)(1), the plaintiff must meet the burden of proving jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). In addition, the district court is empowered to resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 (6th Cir. 1998). "A complaint must contain either direct or inferential allegations with respect

3

to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting*, 163 F.3d at 369.  The court will not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Myers v. United States*, 636 F.2d 166, 168-69 (6th Cir. 1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  This narrow inquiry is based on whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### I.     The Plaintiffs' Claims are Moot

"Under Article III of the Constitution, [a federal court's] jurisdiction extends only to actual cases and controversies.  [A federal court] has no power to adjudicate disputes which are moot."  *McPherson v. Mich. High. Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (internal quotation omitted).  In general, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways."  *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation omitted).  A defendant's voluntary conduct may moot a case only if "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *id.*, and if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  The "heavy burden" of demonstrating that the challenged conduct will not resume rests on the party claiming mootness.  *Friends of the Earth*,

4

528 U.S. at 189; *Ammex, Inc.*, 351 F.3d at 705.

The Sixth Circuit has noted, however, that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." *Ammex, Inc.*, 351 F.3d at 705 (quoting *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (internal quotation omitted)). Indeed, it has been suggested that "such self-correction provides a secure foundation for dismissal based on mootness so long as it appears genuine." *Mosley*, 920 F.2d at 415 (citing *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)).

In applying this more solicitous standard, the Sixth Circuit has repeatedly labeled as moot cases in which plaintiffs sought results that were ultimately accomplished by subsequent changes in underlying government policies. For example, in *Mosley*, the Court found to be moot a plaintiff's efforts to recover child support funds from a government agency when a subsequently passed state statute and a proposed federal regulation established procedures to achieve the very result she sought. 920 F.2d at 414. The Court determined that there was no reasonable basis for assuming that the defendants would fail to comply with the newly passed regulations and that, therefore, there was "no reasonable likelihood that the wrong would be repeated." *Id.* at 415 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1985)). Similarly, the Sixth Circuit concluded that two Michigan prisoners' requests for injunctive relief were properly denied when their claims were mooted by the adoption of prison regulations that resolved their complaints. *See Brower v. Nuckles*, 182 F.3d 916 (table), No. 98-1726, 1999 WL 435173, at *2 (6th Cir. 1999) (unpublished opinion) (finding moot a prisoner's request to use candles at religious services after prison implemented a new policy allowing such use); *Fowler v. McGinnis*, 37 F.3d 1498 (table), No. 94-1468, 1994 WL 545491, at *1 (6th Cir. 1994) (unpublished opinion) (finding moot a prisoner's request for the delivery of pornographic magazines after the prison changed its policy to

allow prisoner to receive the materials in which he was interested).

Lower courts within this circuit have further expanded the line of decision-making that gives deference to voluntary cessation by the government. For instance, one court rejected a plaintiff's attempt to enjoin the enforcement of a state regulation that had been repealed after he brought his claim. *See Hooper v. Morkle*, 219 F.R.D. 120, 123 (S.D. Ohio 2003). In doing so, the court noted that the plaintiff had provided no evidence that the defendants had any intention of reenacting the offensive rule and, thus, his claim was necessarily moot. *Id.* at 124. That same court recently declared a case moot after a government defendant made "significant changes" to one of its regulations upon realizing that its old rule had been promulgated due to an erroneous understanding of the law. *See J.P. v. Taft*, No. 2:04-CV-692, 2005 WL 2405993, at *14 (S.D. Ohio 2005) (slip opinion). In so recognizing, the court emphasized that the defendant's change in policy represented a genuine effort to correct its earlier missteps, as opposed to an attempt to evade judicial review. *Id.* at *15.

While the Sixth Circuit has repeatedly found to be moot claims negated by subsequent, permanent rule and policy adoptions by the government, it has emphasized that, when a plaintiff faces an injury subject to recurrence in spite of the government defendant's voluntary cessation, her claims are justiciable. For instance, in *Ammex*, *Inc.*, the Court held that the Michigan Attorney General's withdrawal of a Notice of Intended Action (NIA) did not render moot the plaintiff's claim for a declaratory judgment. *Ammex*, *Inc.*, 351 F.3d at 705-06. There, the Court noted that the Attorney General had indicated in his withdrawal that the resolution of other litigation could result in a reinstatement of the NIA. *Id.* at 705. As such, it concluded that the defendants had failed to demonstrate that "it [was] absolutely clear that the enforcement action [was] not reasonably likely to recur." *Id.* In another case, the Court found that, despite a government

6

defendant's voluntary cessation, it could not reasonably determine that an alleged wrong would not recur when the defendant had not conceded that it would not, under different circumstances, again engage in the action complained of. *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1057 (6th Cir. 1999), *abrogated on other grounds by Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 156 (2003). It determined, therefore, that the plaintiff's claims were not moot. *Id.* at 1057.

In the case at hand, the defendants, like those in each of the cases detailed above, have "voluntarily" performed the conduct sought by the plaintiffs. Namely, the Corps has determined that the UCRA wetlands are "waters of the United States" that are subject to CWA jurisdiction. (Docket No. 27, Ex. 1, May 5, 2005 Letter to Richard Rinks) As the plaintiffs have emphasized, however, the Corps has qualified this decision in two ways. First, it has asserted that it "retains the authority to revise its decisions . . . if it is presented with new information." (Docket No. 32 at 7) Second, it has noted that its determination that the wetlands are subject to jurisdiction is not a permanent declaration, but rather is valid only "for a period of five years." (Docket No. 27, Ex. 1, May 5, 2005 Letter to Richard Rinks; *see also* Docket No. 32 at 7 n.7 ("approved jurisdictional determinations are subject to expiration (after five years)"))

The court initially shared much of the plaintiffs' discomfort with the Corps' caveats, in part because of deficiencies in the defendants' briefing of the mootness issue. However, after conducting its own research as to the source of these limits on the Corps' jurisdictional determination, the court's concerns have been somewhat allayed. It appears that the impermanent nature of the Corps' jurisdictional determination in this case is not a product of disingenuousness in its pledge to maintain jurisdiction over the wetlands, but rather stems from regulatory limitations that apply to all of the Corps' jurisdictional determinations under the CWA. These regulations indicate both that jurisdictional determinations have a shelf-life of five years and

that they can be revised upon the provision of new information. *See* 3 C.F.R. app. C § 331 (2000) (indicating that an "[a]pproved J[urisdictional] D[etermination] [is] valid for 5 years," and noting that a jurisdictional determination may be reversed if "[a]pplicant/landowner provides new information"). Thus, because the Corps did not choose to include these caveats as part of the jurisdictional determination related to the UCRA wetlands in particular, but rather is apparently required to attach them to all jurisdictional determinations, these limitations do not detract from the genuine nature of the Corps' intentions in this case. *See Mosley*, 920 F.2d at 414 (suggesting that self-correction may suffice to moot a case as long as such actions are genuine).

Accordingly, in light of the increased deference that must be paid to government defendants in voluntary cessation cases, *see Ammex, Inc.*, 351 F.3d at 705, the court finds that the defendants have "ma[d]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 189. Like the defendants in *J.P.*, 2005 WL 2405993, the Corps has arrived at the conclusion that the UCRA wetlands are "waters of the United States" after correcting what was previously faulty information. (*See* Docket No. 27, Ex. 1, May 5, 2005 Letter to Richard Rinks ("[S]ince early last summer, we have been reevaluating this determination [that the wetlands were non-jurisdictional].")) Given their new understanding of the hydrologic link between the wetlands and a navigable-in-fact body of water (*see id.*), the defendants cannot reasonably be expected to reverse their position. In addition, the defendants' pleadings further affirm their commitment to the decision that the wetlands are jurisdictional under the CWA. (*See* Docket No. 32 at 7 (noting that "the Corps has no intention of revisiting the May 2005 determination")) Thus, the defendants have met their "heavy burden" of demonstrating that their contested actions will not recur, and the plaintiffs' efforts to obtain a declaratory judgment are moot. *See Friends of the Earth*, 528 U.S. at 189.

8

It is possible, of course, that the court is mistaken about the Corps' intentions with respect to the UCRA wetlands. If the Corps chooses to reverse course and withdraw its jurisdictional determination, the plaintiffs may reinstate their lawsuit. *See Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 630 (11th Cir. 1998) (noting that plaintiffs could reinstate their lawsuit if the government defendants reneged on their assertion that they would not return to their prior, offensive policy). Under such circumstances, the plaintiffs' case would not be moot, even if the Corps again asserted jurisdiction over the wetlands, because "such 'flip-flopping' would create a reasonable expectation that the [defendant] would reinstate the challenged practice at the close of the lawsuit." *Id.*; *see also The Beacon Journal Publ'g Co., Inc. v. Gonzalez*, No. 5:05CV1396, 2005 WL 2099787, at *2 (N.D. Ohio 2005) (slip opinion) (finding that a case was not moot when defendants displayed a post-litigation propensity for altering their policies). Thus, should such circumstances arise, the courthouse door remains open to the plaintiffs.

## II. The Plaintiffs are Not Entitled to Attorney Fees or Other Litigation Costs

### A. The plaintiffs do not have a cause of action under the citizen-suit provision of the CWA and, therefore, are not entitled to damages under that Act

The plaintiffs claim that they are entitled to attorney and expert witness fees as "prevailing or substantially prevailing parties" under the citizen-suit provision of the CWA. *See* 33 U.S.C. §§ 1365(a) ("any citizen may commence a civil action on his own behalf . . . against the Administrator when there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator"); 1365(d) ("The court . . . may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.").

The defendants refute this claim on three grounds. First, they assert that the plaintiffs

9

cannot recover fees under the CWA because the defendants' jurisdictional determination was a discretionary act and, as such, does not fall within the ambit of the Act's citizen-suit provision. (Docket No. 27 at 21) Second, they argue that, even if the citizen-suit provision applies against the EPA, it cannot be used to recover fees from the Corps. (*Id.* at 18) Finally, they claim that the plaintiffs cannot be considered to be "prevailing or substantially prevailing" parties under the Act because the catalyst theory, which could allow the plaintiffs to recover fees despite the fact that the defendants' revised jurisdictional determination did not stem from a judicial order, is no longer viable in the context of the CWA. (*Id.* at 14)

The court finds that the CWA's citizen-suit provision does not apply to jurisdictional determinations such as the one at issue in this case. The plaintiffs, therefore, cannot use the Act to recover against either the Corps or the EPA. Accordingly, the court, which is in agreement with the defendants' first assertion, need not address their latter two arguments.

In order for the non-performance of an act or duty to trigger the CWA's citizen-suit provision, such performance must have been mandatory. *See* U.S.C. § 1365(a)(2). The plaintiffs here claim that the defendants had a mandatory duty to "make reasoned wetlands determinations" and that this duty was abdicated when the Corps initially determined that the UCRA wetlands were not jurisdictional under the CWA and when the EPA failed to override this determination. (Docket No. 29 at 21)

While the Corps may have a mandatory duty to make some sort of jurisdictional determination, it has discretion over such determination's content. *See Scott v. City of Hammond*, 741 F.2d 992, 995 (7th Cir. 1984) (finding that an agency that may have had a mandatory duty to promulgate standards had discretion as to the standards' substance). Although a court may have the ability under the CWA to hold a defendant responsible for *nonfeasance*, such as the failure to

10

make any jurisdictional determination whatsoever, the Act does not allow for a judgment of *malfeasance*, such as a finding that a defendant made the wrong decision. *See Sun Enter., Ltd. v. Train*, 532 F.2d 280, 288 (2d Cir. 1976) (finding no jurisdiction under § 1365(a)(2) where "it [was] not the failure of the Administrator to perform a non-discretionary duty which [was] at issue; rather, it [was] the manner in which those duties were performed" that was the subject of the claim); *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692, 698 (W.D. Wash. 1996) (finding that a plaintiff's challenge of a Corps determination that a corporation's activities did not fall within CWA jurisdiction was "not correctly characterized as [an allegation of] a failure to perform a nondiscretionary duty," but was instead an assertion that "the Corps performed its duty erroneously").

Although the court recognizes that some courts, namely those in the Fourth Circuit, have analyzed the content of jurisdictional determinations that are the subject of CWA citizens' suits, this court believes that, in the Sixth Circuit, as well as other circuits, the substance of such determinations is not a proper subject for such actions. *Compare Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 315-16 (4th Cir. 1988) (upholding a district court's evaluation of whether a jurisdictional determination was "reasoned") *with Ass'n of Significantly Impacted Neighbors v. City of Livonia*, 765 F. Supp. 389, 391 (E.D. Mich. 1991) (recognizing that a court is powerless to evaluate the substance of a particular agency decision when enforcing the CWA); *see also City of Las Vegas v. Clark County*, 755 F.2d 697, 704 (9th Cir. 1985) (recognizing that the content of an EPA decision "is not the proper subject of a suit under . . . § 1365(a)(2)); Scott, 741 F.2d at 995 (noting that the content of standards promulgated by the EPA "cannot ordinarily be challenged through a citizens' suit").

Indeed, the CWA does not provide standards to be used in determining whether

11

malfeasance occurred. *See Hanson*, 859 F.2d at 316. The Fourth Circuit, when it chose to engage in such an analysis despite this absence, had to import standards from the Administrative Procedure Act ("APA"). *See id*; *see also* 5 U.S.C. § 706 (2000) (delineating the scope of review under the APA).

Because the defendants here made a jurisdictional determination, the plaintiffs cannot use the Act to recover fees from either of the defendants, regardless of that determination's content.[3] Thus, the plaintiffs' claims for such fees under the CWA must be denied.

### B. The plaintiffs are not eligible for fees under the EAJA

Although the plaintiffs, in their Complaint, sought fees under the Equal Access to Justice Act ("EAJA") (Docket No. 1), they have since noted, in their Response in Opposition to Defendant's Motion to Dismiss, that they no longer are attempting to claim fees under that Act, although they reserve the right to do so in the future (Docket No. 29 at 17 n.13).

As conceded by the defendants, "[h]ad this matter not become moot and had Plaintiffs actually litigated and prevailed on their claim that the Corps' September 11, 2002 jurisdictional determination was arbitrary and capricious, contrary to law, or otherwise unlawful under APA section 706(2), Plaintiffs might have had a viable claim for attorneys' fees and costs under the EAJA . . . ." (Docket No. 27 at 11) Indeed, the APA is the proper tool for evaluating the substance of jurisdictional determinations, such as the one made by the Corps in this case. *See* Scott, 741 F.2d at 995 ("The only recognized avenue for challenge to the substance of EPA's actions . . . is a

---

[3]Despite the plaintiffs' arguments to the contrary (*see* Docket No. 29 at 19 n.15), the EPA did not have a mandatory duty to exercise its veto power with respect to the Corps' jurisdictional determination. *See City of Olmstead Falls v. U.S. EPA*, 266 F. Supp. 2d 718, 723 (N.D. Ohio 2003) (citing *Pres. Endangered Species of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1249 (11th Cir. 1996)). Rather, the EPA is "authorized, rather than mandated, to overrule the Corps." *Pres. Endangered Species of Cobb's History, Inc.*, 87 F.3d at 1249. Plaintiffs accordingly cannot use this inaction by the EPA as the basis for their CWA claim.

12

suit for judicial review under the Administrative Procedure Act . . . ."). Additionally, the EAJA provides plaintiffs who have prevailed in their APA actions with an opportunity to obtain fees. *See* 28 U.S.C. § 2412(d)(1)(A) (2000) (awarding to "a prevailing party" the "fees and other expenses, in addition to any costs . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action"); *Pierce v. Underwood*, 487 U.S. 552, 575 (1988) (Brennan, J., concurring).

To qualify as "prevailing," however, a party must have obtained a result that originated in a court order or, at least, received judicial sanction. *See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Resources*, 532 U.S. 598, 603-04 (2001). Although it remains a subject of debate whether the catalyst theory allows plaintiffs whose lawsuits have reached resolutions that bear no judicial imprimatur to recover fees under statutes that award them to both "substantially prevailing" and "prevailing" parties, the Sixth Circuit has clearly held that such recovery is not allowed under statutes that allow fees only to "prevailing" parties. *See Chambers v. Ohio Dep't of Human Servs.*, 273 F.3d 690, 693 n.1 (6th Cir. 2001); *see also* 28 U.S.C. § 2412(d)(1)(A); *cf. United States v. Bd. of County Comm'rs*, No. 1:02-CV-00107, 2005 WL 2033708, at *5 (S.D. Ohio 2005) (finding that the catalyst theory still applied to a statute that allowed fees to both "substantially prevailing" and "prevailing" parties after determining that the two terms "cannot be considered functional equivalents" and that "while the *Buckhannon* reasoning may apply to the latter term, it does not apply to the former, leaving the catalyst theory intact for substantially prevailing parties").

This court has explicitly applied these principles to the realm of the EAJA, holding that the Act is not available for use by plaintiffs hoping to recover under the catalyst theory because it authorizes recovery only for "prevailing" parties. *See Sapir v. Ashcroft*, No. 3:03-0326 (M.D.

13

Tenn. 2003) (unpublished opinion); *see also* 28 U.S.C. § 2412(d)(1)(A) (awarding fees to "prevailing" parties); *Chambers*, 273 F.3d at 693 n.1 (recognizing that "all statutes . . . that authorize attorney's fees to the 'prevailing party' are to be treated consistently"). Accordingly, because the plaintiffs cannot be said to have "prevailed" on their claims after *Buckhannon*, any future attempt by the plaintiffs to recover fees under the EAJA must fail, as the catalyst theory no longer applies to that statute.

## **CONCLUSION**

For the reasons stated herein, the defendants' Motion to Dismiss will be granted. An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

14